UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIAN T. BORONDY, *individually, and as personal representative of the Estate of Nicholas Diaz, deceased*,<br><br>    *Plaintiff*,<br><br>    *vs.*<br><br>CITY OF INDIANAPOLIS, INDIANA; NICHOLAS DRAHER; LAWRENCE CRESS; and DAVID ELLIS,<br><br>    *Defendants.* | 1:20-cv-02158-JMS-TAB |

## **ORDER**

In the early morning hours of June 7, 2019, Indianapolis Metropolitan Police Department ("IMPD") personnel responded to a request for crisis assistance at the residence of Plaintiff Marian Borondy. When they arrived, IMPD personnel determined that Nicholas Diaz, who was at Ms. Borondy's residence, should be placed under a 72-hour emergency detention for psychiatric evaluation. While Mr. Diaz was in IMPD custody, he escaped and subsequently died. Ms. Borondy, individually and as personal representative of the Estate of Mr. Diaz, then initiated this litigation against the City of Indianapolis ("the City"), and IMPD officers Nicholas Draher, Lawrence Cress, and David Ellis. The City has filed a Motion for Partial Judgment on the Pleadings, which is now ripe for the Court's decision. [Filing No. 13.]

**I.**
**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Pleadings include "the complaint, the answer and any written instruments attached as exhibits." *Federated*

*Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) (quotation and citation omitted). "The only difference between a motion for judgment on the pleadings and a motion to dismiss [under Rule 12(b)(6)] is timing; the standard is the same." *Id.* When evaluating a motion to dismiss, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), the allegations in a complaint must "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Id.* at 480 (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). A complaint that offers "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of [her] claim that would entitle [her] to the relief requested." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quotation and citation omitted).

## II.
### BACKGROUND

The following factual allegations are taken from the Complaint, [Filing No. 1], and are accepted as true solely for the purpose of this Order.

On June 7, 2019 at approximately 5:15 a.m., IMPD personnel responded to a call for crisis assistance from Ms. Borondy's residence in Indianapolis. [Filing No. 1 at 5.] After arriving at the residence, IMPD personnel determined that Mr. Diaz, who was at the residence, should be placed

under a 72-hour emergency detention for a psychiatric evaluation because he was a risk to himself and others. [Filing No. 1 at 5; Filing No. 1 at 7.]

Mr. Diaz was taken into IMPD custody, and while in custody he was not placed into handcuffs or otherwise properly restrained. [Filing No. 1 at 5-6.] Additionally, a Crisis Intervention Team ("CIT") was not called during his detention. [Filing No. 1 at 6-7.] Mr. Diaz escaped custody after being left unattended by IMPD Officers Draher, Cress, and Ellis, among others. [Filing No. 1 at 5.] After Mr. Diaz escaped, no meaningful search was conducted to locate him, and he subsequently died. [Filing No. 1 at 5.]

Officers Draher, Cress, and Ellis were acting within the scope and course of their employment, and the City knew that Officers Draher, Cress, and Ellis would "confront a situation such as that" involving Mr. Diaz. [Filing No. 1 at 9.] The City "had a history of officers mishandling situations such as the one giving rise" to this case, and "recklessly hired, supervised, and/or retained [Officers Draher, Cress, and Ellis] when it knew, or should have known, that [they] were unfit for service as law enforcement officers, and/or not properly trained in CIT tactics and protocol." [Filing No. 1 at 10.]

Ms. Borondy, individually and as personal representative of the Estate of Mr. Diaz, alleges claims for: (1) constitutional violations against Officers Draher, Cress, and Ellis in their individual capacities; and (2) *Monell* liability under 42 U.S.C. § 1983 against the City. [Filing No. 1 at 6-11.]

## III.
### DISCUSSION

The City moves for partial judgment on the pleadings, requesting dismissal of Ms. Borondy's *Monell* claim against the City.[1] [*See* Filing No. 24 (Defendants stating in their Notice Regarding Their Motion for Partial Judgment on the Pleadings that "[t]he sole remaining issue for the Court to decide on the Defendants' motion for partial judgment on the pleadings, is whether the Plaintiff's *Monell* claims can withstand the scrutiny of Rule 12(b)(6)").] In support of its motion, the City argues that Ms. Borondy has attempted to assert a claim under a custom, policy, or practice theory as well as a failure-to-train theory, but has failed to adequately do so under either theory. [Filing No. 14 at 4.] As for the custom, policy, or practice theory, the City argues that Ms. Borondy has not identified "an actual policy, practice or custom the City was supposed to have or condone[d]." [Filing No. 14 at 4.] Additionally, it contends that even if Ms. Borondy had identified a custom, policy, or practice, she has not alleged or explained "how the custom or policy amounted to deliberate indifference." [Filing No. 14 at 5.] It asserts that Ms. Borondy "failed to allege that the policy, practice, or custom was the moving force behind the constitutional violation and that a policymaker was involved in the policy, practice, or custom." [Filing No. 14 at 6.] As for Ms. Borondy's failure-to-train theory, the City argues that she has only alleged "threadbare recitals of the elements" of a *Monell* claim, and that it is not enough to simply allege that if the

---

[1] The Complaint originally included Moraima Velez-Sharkey, as parent and legal guardian of RRV and MJV, minors, as a Plaintiff, and IMPD Officers Anthony Kelly, Robert Chandler, and Justin Baker as Defendants. [*See* Filing No. 1.] The Complaint also originally asserted a claim for intentional infliction of emotional distress against the IMPD Officer Defendants. [Filing No. 1 at 11.] On December 2, 2020, while the Motion for Partial Judgment on the Pleadings was pending, the parties filed a Stipulation of Partial Dismissal as to Certain Claims and Parties in which they stipulated that Ms. Velez-Sharkey should be dismissed as a Plaintiff, Officers Kelly, Chandler, and Baker should be dismissed as Defendants, and the intentional infliction of emotional distress claim should be dismissed. [Filing No. 23.] On December 3, 2020, the Court entered an Order dismissing those parties and that claim. [Filing No. 25.]

IMPD Officers had adequate training, the situation would have turned out differently. [Filing No. 14 at 7 (quotation and citation omitted).] The City also asserts that Ms. Borondy's allegations that the City had a history of officers mishandling situations like the one involving Mr. Diaz or that the City recklessly hired, supervised, and/or retained the IMPD Officers are insufficient. [Filing No. 14 at 7.] The City notes that "[a]bsent from the…complaint are any allegations of how the officers were trained, who trained them, why the training was deficient, and how this constituted deliberate indifference, and how the failure to properly train the officers caused the…constitutional violation." [Filing No. 14 at 8.]

In her response, Ms. Borondy argues that she has sufficiently alleged her custom, policy, or practice *Monell* claim because she has alleged gaps in training, and specifically has alleged that "(1) the City knew that the officers involved would be faced with a situation such as the one in this case, (2) that situations such as the one in this case presented the officers involved with a choice of the sort that adequate CIT…training would make less difficult, (3) that no CIT team was properly notified, (4) that the City had a history of officers mishandling situations such as the one in this case, and (5) that the City knew that the officers involved were not properly trained in CIT tactics to handle situations such as the one in this case." [Filing No. 21 at 3-4.] Ms. Borondy asserts that she is not required to "identify every possible detail, both known and unknown," and that her allegations have put the City on notice of the *Monell* claim against it. [Filing No. 21 at 5.] She also contends that she has alleged that because the IMPD Officers were not properly prepared, and because they acted with deliberate indifference to Mr. Diaz's psychological and medical conditions, they did not properly restrain him, did not notify a CIT team, and did not conduct a meaningful search once he escaped from custody. [Filing No. 21 at 6.] Ms. Borondy argues that she has alleged gaps in the officers' training, and that the City knew, or should have known, that

the officers "were unfit and/or not properly trained in CIT tactics and protocol." [Filing No. 21 at 6-7.]

In its reply, the City argues that it cannot reasonably be inferred from the Complaint that Ms. Borondy has alleged that a failure to train the IMPD Officers led to Mr. Diaz's death. [Filing No. 22 at 1-2.] It contends that Ms. Borondy's allegations that the IMPD Officers were deliberately indifferent are insufficient, and that she must allege that the City was deliberately indifferent and has not. [Filing No. 22 at 3.] The City also argues that allegations of a gap in policy do not alleviate the need for Ms. Borondy to allege that the gap was the "moving force" behind the constitutional violation. [Filing No. 22 at 3-4.] Finally, the City asserts that Ms. Borondy must allege a pattern of unconstitutional behavior in connection with her failure-to-train theory, and she has not done so. [Filing No. 22 at 4.]

The Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), held that municipalities may be sued under § 1983 when their actions violate the Constitution. The Court limited this liability to actions that may be attributed to the municipality itself: "a municipality cannot be held liable solely because it employs a tortfeasor…on a *respondeat superior* theory." *Id.* at 691 (emphasis omitted). In order to sustain a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404-07 (1997)). A plaintiff can demonstrate that an official policy existed by providing "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or

causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.,* 183 F.3d 734, 737 (7th Cir. 1999). "The critical question under *Monell*…is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

Ms. Borondy sets forth the following allegations to support her *Monell* claim against the City:

- "[T]he unconstitutional actions of the individual IMPD officers identified herein, and all other responsible IMPD individuals, were committed pursuant to an official policy or custom, and as the IMPD officers identified herein, and all other responsible IMPD individuals, were inadequately trained and/or supervised";

- "At all times relevant herein, [Officers Draher, Cress, and Ellis], and/or other IMPD Personnel acted with deliberate indifference to a serious medical condition by allowing [Mr. Diaz] to escape their custody, refusing to effectuate [Mr. Diaz's] safe return to custody, and other deliberate and/or reckless actions and inactions described herein";

- "[The City] is liable for the actions of [Officers Draher, Cress, and Ellis], and/or other IMPD Personnel while said officers were acting within the scope and course of their employment with [the City] and/or IMPD";

- "[The City] is liable for the actions of [Officers Draher, Cress, and Ellis], and/or other IMPD Personnel while said officers were acting on the express or implied authority of [the City] and/or IMPD";

- "At all times relevant hereto, [the City] knew that the aforementioned individual officers would confront a situation such as that giving rise to this cause of action";

- "At all times relevant hereto, [the City] (sic) the situation that gives rise to this cause of action presented the aforementioned individual officers with a choice of the sort that adequate training would make less difficult";

- "At all times relevant hereto, [the City] had a history of officers mishandling situations such as the one giving rise to this cause of action";

- "The aforementioned reckless and deliberate actions and inactions of the aforementioned individual officers are of a type that cause the frequent deprivation of the constitutional rights of citizens"; and

- "[The City], by and through the IMPD, recklessly hired, supervised, and/or retained the aforementioned IMPD Personnel when it knew, or should have known, that the aforementioned IMPD Personnel were unfit for service as law enforcement officers, and/or not properly trained in CIT tactics and protocol."

[Filing No. 1 at 2; Filing No. 1 at 9-10.]

The Court is mindful that "federal courts may not apply a 'heightened pleading standard' – more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure – in civil rights cases alleging municipal liability under…42 U.S.C. § 1983." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quotation and citation omitted). But the Court also is not "bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation and citation omitted), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678. Ms. Borondy's allegations in connection with her *Monell* claim are too vague and conclusory to put the City on notice of her claim.

Specifically, Ms. Borondy generally alleges that the unconstitutional acts of the IMPD officers "were committed pursuant to an official policy or custom," and that the officers "were inadequately trained and/or supervised." [Filing No. 1 at 2.] But she does not allege what the policy or custom was, hinting only that adequate training would have made the choices the officers were confronted with "less difficult." [Filing No. 1 at 9-10.] Indeed, Ms. Borondy does not even allege how Mr. Diaz died or when he died, only generally alleging that he died "[s]ubseqent to [his] escape." [Filing No. 1 at 5.]

Further, Ms. Borondy alleges that Officers Draher, Cress, and Ellis "and/or other IMPD Personnel" acted with deliberate indifference to Mr. Diaz's serious medical condition "by allowing

[him] to escape their custody, refusing to effectuate [his] safe return to custody, and other deliberate and/or reckless actions and inactions described herein." [Filing No. 1 at 9.] But the focus of a *Monell* claim is on the City's actions, and Ms. Borondy does not explain how the City acted with deliberate indifference through its policies or customs. *Calderone v. City of Chicago*, 979 F.3d 1156, 1163-64 (7th Cir. 2020) ("To ultimately prove a *Monell* claim, a plaintiff must have evidence of…culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations").[2]

Additionally, Ms. Borondy's allegations that Officers Draher, Cress, and Ellis were acting within the scope of their employment or on express or implied authority of the City are irrelevant for *Monell* purposes. It is well-settled that a municipality can only be held liable under § 1983 "for its own policies and practices, not under a theory of *respondeat superior*." *Peterson v Wexford Health Sources, Inc.*, --- F.3d ----, 2021 WL 243524, at *5 (7th Cir. 2021); *see also Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("[U]nits of local government are responsible only for their policies rather than misconduct by their workers") (quotation and citation omitted). Ms. Borondy's allegations regarding Officers Draher, Cress, and Ellis acting within the scope of their employment or within the City's authority, are more akin to a *respondeat superior* type claim. They do not support a *Monell* claim.

---

[2] Ms. Borondy alleges in the "Introduction" section of her Complaint that the City "deprived [Mr. Diaz] of his rights under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference and reckless disregard…." [Filing No. 1 at 2.] But she does not tie this "deliberate indifference" allegation to the implementation of a policy or custom – instead, she alleges the deprivation of constitutional rights was done with deliberate indifference and pursuant to a custom or policy. In order for a *Monell* claim to succeed, the custom or policy must have been formulated or maintained with deliberate indifference to a risk that the policy would lead to constitutional violations, *Calderone*, 979 F.3d at 1163-64, which is not what Ms. Borondy alleges. Ms. Borondy's "deliberate indifference" allegation in connection with the City's actions does not advance her *Monell* claim.

Ms. Borondy also alleges that the City recklessly hired, supervised, and/or retained officers when it knew or should have known that the officers were unfit for service and/or not properly trained in CIT tactics and protocol. [Filing No. 1 at 10.] This allegation might support a negligence claim, but it does not advance Ms. Borondy's *Monell* claim because she does not allege that the reckless hiring, supervision, or retention was done pursuant to a City custom or policy.

Finally, Ms. Borondy's remaining allegations about what the City knew, the City's "history," and the City's actions or inactions are too general and vague to put the City on notice of exactly upon what Ms. Borondy's claim is based. The allegation that the City knew that Officers Draher, Cress, and Ellis "would confront a situation such as that giving rise to this cause of action," [Filing No. 1 at 9], is particularly vague. Ms. Borondy does not set forth what the "situation" is – is it how to handle a 72-hour psychiatric hold in general, whether to restrain an individual who is subject to a 72-hour hold, whether to use CIT training or protocols during the 72-hour hold, whether to search for an individual who has escaped during a 72-hour hold, how to handle an individual who has escaped custody in general, or something else altogether? It is impossible to discern from Ms. Borondy's allegations to what "situation" she is referring. And her vague allegation about the City's "actions and inactions" being "of a type that cause the frequent deprivation of the constitutional rights of citizens" is similarly unclear. Ms. Borondy does not specify the actions or inactions or the deprivation of constitutional rights to which she is referring. Finally, Ms. Borondy's allegation that the City "had a history of officers mishandling situations such as the one giving rise to this cause of action," [Filing No. 1 at 10], again does not put the City on notice of what the "situation" is, and what aspects of it were "mishandled." These general allegations about what the City knew, the City's "history," and the City's actions or inactions do

not provide the factual detail necessary for the City to know the basis for Ms. Borondy's *Monell* claim.

Put simply, Ms. Borondy has not alleged sufficient facts to "nudge" her *Monell* claim "across the line from conceivable to plausible," nor do her allegations "give [the City] fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 570. Accordingly, the Court **GRANTS** the City's Motion for Partial Judgment on the Pleadings. [Filing No. 13.]

### IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City's Motion for Partial Judgment on the Pleadings. [13.] Ms. Borondy's *Monell* claim against the City (Count II – Liability of Defendant, City of Indianapolis, Indiana) is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to **TERMINATE** the City of Indianapolis, Indiana as a Defendant in this matter. No partial final judgment shall issue at this time. Count I (Liability of the Individual Officers/IMPD Personnel) **SHALL PROCEED**.

Date: 1/29/2021

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**